FILED
1997 DEC -2 PM 12: 53
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

| | |
|---|---|
| **REUBEN HARRIS, JR.,** | ] |
| Plaintiff(s), | ] |
| vs. | ] CV-97-N-1286-W |
| **ALABAMA BOARD OF PARDONS AND PAROLES, et al.,** | ] |
| Defendant(s). | ] |

ENTERED
DEC 2 1997

## Memorandum of Opinion

### I. Introduction.

In this employment discrimination action, an employee of the Alabama Board of Pardons and Paroles ("Board"), Reuben Harris, Jr., has brought claims under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"); 42 U.S.C. § 1983 for violation of rights under the Fourteenth Amendment to the United States Constitution; 42 U.S.C. § 1981; and 42 U.S.C. § 1985(3). Mr. Harris has named as defendants the Board, and William Brazeal ("Brazeal"), Flo Staggs ("Staggs"), and William C. Young ("Young"), each in their official and individual capacities as to the section 1983 claims, and Mr. Brazeal and Ms. Staggs in their individual capacities as to the claims brought under section 1985(3).

Specifically, the plaintiff, a black male, alleges that the defendants discriminated against him because of his race in violation of Title VII by unlawfully retaliating against him when he filed a grievance against his immediate supervisor, Mr. Brazeal, wherein the

17

plaintiff alleged that racially motivated, adverse actions toward him were taken by Mr. Brazeal. *Amended Complaint* at 3-6. Moreover, the plaintiff asserts that he filed the grievance with Ms. Staggs, and that, in violation of section 1985(3), Ms. Staggs and Mr. Brazeal then conspired to solicit complaints against him from current and former white employees of the Board. *Id.* at 4; *see also Plaintiff's Supplemental Submissions in Opposition to Defendant's Motion to Dismiss Amended Complaint/Motion for Summary Judgment* at 6-7. The plaintiff also claims that the "Board's written policies and procedures create a contractual relationship between the Board and its employees" and that the defendants violated section 1981 by failing to comply with the procedures adopted by the Board for departmental disciplinary actions. *Complaint* at 6; *Plaintiff's Supplemental Submissions* at 4-5. Finally, Mr. Harris alleges that the defendants, acting under color of state law, subjected him to the deprivation of equal protection of the laws as guaranteed by the Fourteenth Amendment to the United States Constitution in violation of section 1983. *Complaint* at 6; *Plaintiff's Supplemental Submissions* at 5-6

The case is presently before the court on the defendants' motion to dismiss plaintiff's complaint and the defendants' motion to dismiss plaintiff's amended complaint, filed August 5, 1997, and September 5, 1997, respectively. However, because matters outside the pleadings were presented to the court in the defendants' submission in support of their September 5 motion, the court entered an order on October 22, 1997, directing that both motions to dismiss would be treated as ones for summary judgment as provided in Rule 56

of the Federal Rules of Civil Procedure.[1] *See* Fed. R. Civ. P. 12(b); *see also Fikes v. City of Daphne*, 79 F.3d 1079, 1083 (11th Cir. 1996). This conversion was at the court's own discretion. *Jones v. Automobile Ins. Co. of Hartford, Conn.*, 917 F.2d 1528, 1532 (11th Cir. 1990). The court then provided the parties eleven (11) days to submit any relevant evidence and argument in support of or in opposition to the merits of the pending motions. *See Marine Coatings of Alabama, Inc. v. United States*, 792 F.2d 1565, 1568 (11th Cir. 1986). The parties have done so and the motions are ripe for decision. Upon due consideration, the motions will be granted in part and denied in part.

## II. Statement of Facts.[2]

The plaintiff was employed in the Tuscaloosa, Alabama, office of the Alabama Board of Pardons and Paroles from November 1981 until July 1996 when he agreed to be transferred to the Board's Cullman, Alabama, field office. From 1981 until 1986, Mr. Harris worked in the Tuscaloosa office as a probation and parole officer. He was promoted in 1986 to Officer in Charge of the Tuscaloosa office and, in this position, was responsible for supervising the work of the clerical staff at that office. Mr. Harris's immediate supervisor

---

[1] According to Rule 12(b) of the Federal Rules of Civil Procedure, "If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleadings to state a claim upon which relief can be granted, matters outside the pleadings are presented to and not excluded by the court, the matter shall be treated as one for summary judgment and disposed of as provided in Rule 56." Fed. R. Civ. P. 12(b).

The defendants stated that both motions to dismiss were brought pursuant to Rule 12(b), without specifying which subsection(s) of Rule 12(b) they invoked. However, because the motions argue that, *inter alia*, plaintiff's complaint and amended complaint failed to state claims upon which relief may be granted, the court concluded that defendants' motions were brought, at least in part, pursuant to Rule 12(b)(6).

[2] The facts set out below are gleaned from the parties' submission of facts claimed to be undisputed, their respective responses to those submissions, and the court's own examination of the evidentiary record. These are the "facts" for summary judgment purposes only. They may not be the actual facts. *Cox v. Administrator U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

3

during his time at the Tuscaloosa office was Mr. Brazeal, who is white and serves as the district supervisor for the district that includes the Tuscaloosa probation and parole office.

On January 29, 1996, Mr. Harris filed an internal grievance against Mr. Brazeal alleging, *inter alia*, race discrimination. *See Plaintiff's Exhibit 1*. Mr. Harris filed the grievance with Ms. Staggs, the Director of Field Services, who responded to the grievance in the form of a four-page communication on February 7, 1996. *See id.* After analyzing and explaining each of Mr. Harris's claims, Ms. Staggs concluded that the grievance had "no merit." *Plaintiff's Exhibit 1*.

About a month later, on March 15, 1996, Ms. Staggs submitted a request to Assistant Executive Director Don Drasheff that a departmental disciplinary hearing be convened to hear testimony concerning charges that had been brought against Mr. Harris, including charges of disruptive conduct, racial discrimination, failing to act as an officer in charge, failing to perform his job properly, and failing to cooperate with coworkers. *See Plaintiff's Exhibit 1, Attachment F.* On April 18, 1996, Mr. Harris was notified by Mr. Young that it had been brought to the attention of the department that Mr. Harris had engaged in "actions or lack of action which possibly violate[d] the Department's policies" and that a disciplinary hearing on the matters was set for May 28, 1996, at 10:00 a.m. *See Plaintiff's Exhibit 1, Attachment E.* The specific charges against Mr. Harris were detailed in Mr. Young's letter to the plaintiff. *See id.*

At the hearing on May 28, 1996, witnesses were called by the department to present evidence in support of the charges against Mr. Harris. After a full day of hearing evidence, a recess was taken. When the hearing reconvened on May 30, 1996, Mr. Harris, via his

4

attorney, requested a settlement. *See Plaintiff's Exhibit 1 (Affidavit of Reuben Harris, Jr., at 3)*. Mr. Harris requested[3] and was granted a transfer to the Cullman, Alabama, office as a Probation and Parole Officer III in exchange for the Board's terminating the pending disciplinary action against Mr. Harris.[4] *See Defendant's Exhibit B (including Board Order dated July 22, 1996)*. Apparently, Mr. Harris desired the transfer to Cullman "in order to reduce the expenses [he] was incurring to oppose the Board's [disciplinary] action." *Plaintiff's Exhibit 1 (Affidavit of Reuben Harris, Jr., at 3)*.

On August 14, 1996, after voluntarily transferring to the Cullman office, Mr. Harris filed an EEOC Charge of Discrimination against the defendants alleging racial discrimination and retaliation. Mr. Harris received a copy of his Notice of Right to Sue on or about February 28, 1997. On May 23, 1997, Mr. Harris filed a civil complaint in this court.

## III. Summary Judgment Standard.

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings,

---

[3] Mr. Harris claims that, although he "did not initiate discussion regarding settlement," *see Plaintiff's Exhibit 1 (Affidavit of Reuben Harris, Jr., at 3)*, he states that his "attorney approached him regarding settlement." *Id.*

[4] Apparently, the settlement did not include a release of liability in favor of the Board with regard to possible future litigation by Mr. Harris.

5

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.* at 323.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). The nonmoving party need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings. *Id.* at 324. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.

After the plaintiff has properly responded to a motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law

6

will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52; *see also Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 745 n.11(1983) (indicating the standard for summary judgment is "[s]ubstantively . . . very close" to that for motions for directed verdict). However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the evidence is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted); *accord Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are functions of the jury, and, therefore, "[t]he evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. The nonmovant need not be given the benefit of every inference

7

but only of every reasonable inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## IV. Discussion.

### A. Eleventh Amendment Immunity.

The Eleventh Amendment provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another state, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. The Eleventh Amendment defines the initial parameters of the court's jurisdiction over the plaintiff's sections 1981, 1983 and 1985(3) claims. Because assertions of immunity under the Eleventh Amendment raise issues concerning subject matter jurisdiction, *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 99 n. 8, 104 S. Ct. 900, 907, 79 L. Ed. 2d 67 (1984), an Eleventh Amendment claim may be raised at any time. *Id.*; FED. R. CIV. P. 12(h)(3). Hence, the court finds that the state defendants have timely raised this defense by their motions for summary judgment.

#### 1. Alabama Board of Pardons and Paroles.

##### a. Title VII.

The defendants argue generally that the "law is well-settled that a state and any of its agencies are immune from suit," *Defendant's Memorandum Brief in Support of Motion to Dismiss Amended Complaint* at 3, without specifying which, if any or all, of the plaintiff's claims against the Board should be dismissed based on such immunity. In his responsive submission, the plaintiff argues that his Title VII claim for various remedies is viable against

8

the Board, a state entity, despite the immunity doctrine because of the Supreme Court's interpretation of Title VII. *See Plaintiff's Memorandum Brief in Opposition to Defendant's Motion to Dismiss Amended Complaint* at 3 (quoting *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456 (1976). The court agrees.

As the plaintiff properly points out, in *Fitzpatrick v. Bitzer*, 427 U.S. 445, 96 S. Ct. 2666, 49 L. Ed. 2d 614 (1976), the Supreme Court held that Congress has the power to abrogate the states' Eleventh Amendment immunity when it enacts legislation under section 5 of the Fourteenth Amendment:

> In that section Congress is expressly granted authority to enforce "by appropriate legislation" the substantive provisions of the Fourteenth Amendment, which themselves embody significant limitations on state authority. When Congress acts pursuant to § 5, not only is it exercising legislative authority that is plenary within the terms of the constitutional grant, it is exercising that authority under one section of a constitutional Amendment whose other sections by their own terms embody limitations on state authority. We think that Congress may, in determining what is "appropriate legislation" for the purpose of enforcing the provisions of the Fourteenth Amendment, provide for private suits against States or state officials which are constitutionally impermissible in other contexts.

*Id.* at 456, 96 S. Ct. at 2671 (footnote omitted). The *Fitzpatrick* Court went on to find that by a 1972 amendment to Title VII of the Civil Rights Act of 1964 that allowed private litigants to recover money damages from state governments, Congress intended to effect such a waiver of the states' Eleventh Amendment immunity. *Id.* at 457, 96 S. Ct. at 2672. Because the plaintiff's claim under 42 U.S.C. § 2000e arises under Title VII of the 1964 Act, no Eleventh Amendment barrier exists here. Accordingly, the defendants' motions for summary judgment will be denied as to Mr. Harris's Title VII claim against the Board.

9

**b.    Section 1981, Section 1983, and Section 1985(3).**

The court next turns to whether Mr. Harris's claims brought against the Board under section 1981, section 1983 and section 1985(3), to the extent his amended complaint can be construed to allege such claims against the Board, are subject to dismissal under immunity principles. The general rule is that the Eleventh Amendment is a complete bar to lawsuits brought in federal court against a state or state agency by individuals. *Halderman*, 465 U.S. at 98-100, 104 S. Ct. at 906-08 (Eleventh Amendment bar to suit against state and state agencies applies "regardless of the nature of the relief sought"); *see also Edelman v. Jordan*, 415 U.S. 651, 662-63, 94 S. Ct. 1347, 1355-56, 39 L. Ed. 2d 662 (1974). An individual may, however, bring suit if the state unequivocally has waived its immunity or if congressional legislation under § 5 of the Fourteenth Amendment operates as a waiver of the Eleventh Amendment's protection. *Kennecott Copper Corp. v. State Tax Comm'n*, 327 U.S. 573, 577, 66 S. Ct. 745, 746-47, 90 L. Ed. 862 (1946); *Hutto v. Finney*, 437 U.S. 678, 693, 98 S. Ct. 2565, 2574-75, 57 L. Ed. 2d 522 (1978) (citation omitted).

Neither the State of Alabama nor Congress has waived Eleventh Amendment immunity under sections 1981, 1983 or 1985(3); therefore, the aforementioned exceptions do not apply. *See Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1524-25 (11th Cir. 1990) (holding that exceptions to Eleventh Amendment immunity do not apply in section 1983 actions); *Sessions v. Rusk State Hosp.*, 648 F.2d 1066, 1069 (5th Cir. Unit A 1981) (holding that the Eleventh Amendment applies in section 1981 litigation); *Fincher v. Florida Dep't of Labor & Employment Sec. Unemployment Appeals Comm'n*, 798 F.2d 1371, 1372 (11th Cir. 1986), *cert. denied*, 479 U.S. 1072, 107 S. Ct. 1262, 94 L. Ed. 2d 124 (1987) (finding "no

10

express congressional abrogation of the state's Eleventh Amendment immunity with respect to 42 U.S.C. § 1985 actions"). Because the Alabama Board of Pardons and Paroles is an agency of the State of Alabama, the court finds that the Eleventh Amendment protects it from all liability under sections 1981, 1983 or 1985(3). See ALA. CODE § 15-22-20 (1975) (creating the Alabama Board of Pardons and Paroles). Accordingly, the defendants' motions for summary judgment are due to be granted as to the sections 1981, 1983, and 1985(3) claims asserted against the Alabama Board of Pardons and Paroles.

### 2. State Officials Sued in Their Official Capacities.[5]

The Eleventh Amendment also prohibits the plaintiff's sections 1981, 1983 and 1985(3) action seeking compensatory and punitive damages against the state defendants sued in their official capacities. See *Edelman*, 415 U.S. at 662-63, 94 S. Ct. at 1355-56. In *Carr*, the Eleventh Circuit held that "[l]awsuits against a state official in his or her official capacity are suits against the state when 'the state is the real, substantial party in interest.'" 916 F.2d at 1524 (quoting *Halderman*, 465 U.S. at 101, 104 S. Ct. at 908). When a plaintiff seeks monetary relief from a state employee in his or her official capacity, as here, "the state is considered the real party in interest because an award of damages would be paid by the state." *Id.* (citation omitted). Accordingly, summary judgment is due to be granted on the plaintiff's sections 1981, 1983 and 1985(3) claims for compensatory and punitive damages against the state officials sued in their official capacities. See *Gorman v. Roberts*, 909 F. Supp. 1493, 1502-03 (M.D. Ala. 1995).

---

[5] The following defendants are named in their official capacities: William Brazeal, Flo Staggs, and William C. Young.

In interpreting the Eleventh Amendment, courts distinguish between suits against a state or state agency and those against state employees. When federal rights are asserted against state employees sued in their official capacities, the Eleventh Amendment prohibits claims for retrospective monetary relief (*i.e.*, compensatory and punitive damages) paid from the state treasury but not prospective equitable relief (*i.e.*, declaratory and injunctive relief). *See Ex parte Young*, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908) (holding that a plaintiff seeking prospective relief from the state must name as a defendant a state official rather than the state or a state agency directly even though in reality the suit is against the state); *see also Lassiter v. Alabama A & M University*, 3 F.3d 1482, 1485 (11th Cir. 1993).

In his amended complaint, the plaintiff seeks "such injunctive and further relief as may be necessary and proper, including reinstatement to his position in the Tuscaloosa office of the Board of Pardons and Paroles (or transfer to a facility that is closer to Plaintiff's home) and such other relief as may appear to the court to be equitable and just." *Amended Complaint* at 7-8. Unfortunately, the amended complaint does not specify which individual defendants sued in their official capacities, if any, the plaintiff seeks injunctive relief against, and it does not provide any particulars whatsoever as to the prospective shape of the injunctive relief, save the request directed to the Board for reinstatement in the Tuscaloosa office. However, construing the plaintiff's complaint in the light most favorable to the non-moving party, as the court is required to do, the defendants' motions will be denied as to claims for injunctive relief against the individuals named in their official capacities.

### B. Qualified Immunity.

#### 1. Sections 1983, 1981 and 1985(3).

To state a claim pursuant to 42 U.S.C. § 1983, Mr. Harris must demonstrate that a person has acted "under color of any statute, ordinance, regulation, custom, or usage of any State" to deprive him of any "rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. Mr. Harris claims that the defendants violated section 1983 by violating his Fourteenth Amendment right to equal protection under the laws. Mr. Harris also asserts that the defendants violated section 1981 by "depriv[ing] him of employment and contractual opportunities." *Amended Complaint* at 6. Finally, Mr. Harris contends that defendants Brazeal and Staggs together conspired to deprive him "of equal protection of the laws and of equal privileges and immunities under the laws in violation of 42 U.S.C. § 1985(3)." *Id.*

The individual defendants assert that they are entitled to qualified immunity, and, consequently, the sections 1983, 1981 and 1985(3) claims against these defendants should be dismissed. *Defendant's Memorandum Brief in Support of Motion to Dismiss Amended Complaint* at 5-6. "Qualified immunity protects government officials performing discretionary functions from civil trials (and the other burdens of litigation, including discovery) and from liability if their conduct violates no 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Lassiter v. Alabama A & M Univ.*, 28 F.3d 1146, 1149 (11th Cir. 1994) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). A right may only be clearly established where "the contours of the right [are] sufficiently clear [so] that a reasonable official . . . understand[s] that what he

13

is doing violates that right." *Cofield v. Randolph County Comm'n*, 90 F.3d 468, 470 (11th Cir. 1996). Qualified immunity almost always protects government actors; "only in exceptional cases will [they] have no shield against claims made against them in their *individual capacities*." *Lassiter*, 28 F.3d at 1149 (emphasis in original). In fact, qualified immunity almost always applies to damages claims, but as the Eleventh Circuit has noted, "the defense is a narrow one, leaving plaintiffs other avenues of relief." *Id.* at 1149 n. 2. A plaintiff may bring a claim for damages against government actors in their official capacity absent Eleventh Amendment immunity or may seek injunctive relief. *Id.*; *see also* discussion *supra*.

The Eleventh Circuit has established a two-part analysis for qualified immunity claims. The initial burden is on the public official to establish, at the time of the occurrence of the matters complained of, that he was acting within the scope of his discretionary authority. *Zeigler v. Jackson*, 716 F.2d 847, 849 (11th Cir. 1983). Then, in order to impose liability upon defendant government officials, the plaintiff must establish the absence of objective good faith by demonstrating that "the official's alleged misconduct was 'objectively unreasonable' in that it violated clearly established law." *Schopler v. Bliss*, 903 F.2d 1373, 1380 (11th Cir. 1990) (quoting *Harlow*, 457 U.S. at 818). "For qualified immunity to be surrendered, pre-existing law must dictate, that is truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what the defendant is doing violates federal law in the circumstances." *Lassiter*, 28 F.3d at 1150.

14

Qualified immunity is applicable only to claims for monetary relief made against public officials acting in their individual capacities. In the case at bar, the plaintiff has made such claims against Mr. Brazeal, Ms. Staggs, and Mr. Young in their individual capacities. *See Amended Complaint* at 2-3. According to the plaintiff, each of these "defendants, acting under color of state law, subjected him to the deprivation of equal protection of the laws as guaranteed by the Fourteenth Amendment to the U.S. Constitution." *Plaintiff's Supplemental Submissions in Opposition to Defendant's Motion to Dismiss Amended Complaint/Motion for Summary Judgment* at 5. The plaintiff asserts that, *inter alia*, he filed a grievance against Mr. Brazeal on January 29, 1996, alleging race discrimination. *Id.* Mr. Harris further contends that Ms. Staggs, who responded to his grievance, neither investigated the allegations of racism contained in his grievance against Mr. Brazeal nor took any action to correct Mr. Brazeal's "racially motivated actions against [him]." *Amended Complaint* at 4.

According to Mr. Harris, Mr. Brazeal routinely undermined his supervisory authority because of his race; Mr. Brazeal and Ms. Staggs solicited complaints from white employees after he filed his grievance based on Mr. Brazeal's purported racial discrimination; and Mr. Young initiated disciplinary action against him as a result of plaintiff's grievance. *See Plaintiff's Memorandum Brief in Opposition to Defendant's Motion to Dismiss Amended Complaint* at 4; *Amended Complaint* at 3-6. The defendants' brief merely argues that Mr. Harris's claims fail because he "has failed to meet the heightened pleading standard applicable to [such actions] against governmental officials in their individual capacities." *Defendant's Memorandum Brief in Support of Motion to*

15

*Dismiss Amended Complaint* at 5. While the plaintiff's allegations are supported by only scant evidence, the defendant's brief does not address any of the plaintiff's specific claims and, as a result, their brief is of no help to the court.

It is clear that in 1996, when the great majority of the actions giving rise to the plaintiff's claims took place, the Eleventh Circuit had determined that the equal protection right to be free from racial discrimination was "clearly established." *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1478 (11th Cir. 1991) (citing Washington v. Davis, 426 U.S. 229, 239-41, 96 S. Ct. 2040, 2047-48, 48 L. Ed. 2d 597 (1976)). Hence, if, as Mr. Harris alleges, Messrs. Brazeal, Staggs, and Young violated his right to equal protection of the laws, they unquestionably would not be immune from civil liability in their individual capacities. At this early stage of the proceedings, and because the defendants have not sufficiently demonstrated otherwise, particularly in light of the findings required by *Foy v. Holston*, 94 F.3d 1528 (11th Cir. 1996), the court concludes that disputed issues of fact preclude the entry of summary judgment on the issue of race discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment.

In *Foy*, the Eleventh Circuit reviewed an appeal of a district court's denial of qualified immunity. Even assuming that the individual defendants in *Foy* were motivated in part by substantial prejudice, the Eleventh Circuit held that they were nonetheless entitled to qualified immunity since their conduct was "objectively reasonable" under the circumstances. *Foy*, 94 F.3d at 1536. In other words, the court found that while the defendants' conduct may have been partially based on prejudice, it also was based on an

16

indisputable and "adequate" lawful motive as demonstrated by evidence of that lawful motive. *See id.*

The Eleventh Circuit recently reiterated this rationale and found that, in a race discrimination suit brought under sections 1981 and 1983, the individual defendants were entitled to qualified immunity because the transcripts from the employee's disciplinary hearings offered "conclusive support for the defendants' claimed adequate lawful motives for demoting and discharging the employee." *Johnson v. City of Fort Lauderdale, Fla.*, No. 96-4538, 1997 WL 661760, at *7 (11th Cir. Nov. 5, 1997). The Eleventh Circuit explained that "[e]ven assuming that the defendants acted with some discriminatory or retaliatory motives in demoting and discharging [the plaintiff], the law did not clearly establish that a reasonable official faced with the same evidence of disobedience and deception should not have disciplined [the plaintiff] in the same manner." *Johnson*, 1997 WL 661760, at *7.

In the present case, the individual defendants have not, at this juncture in the proceedings, presented indisputable and "adequate" evidence of the motives in initiating disciplinary action against the plaintiff to satisfy the *Foy* and *Johnson* analysis. None of the parties submitted to the court a transcript from the disciplinary hearing held on May 28 and May 30, 1996, which, arguably, would have been helpful in this analysis. Thus, qualified immunity does not protect the individual defendants on the sections 1983 and 1981 claims here.

17

Finally, the court points out that qualified immunity is not available as a defense to a section 1985(3) claim.[6] *See Johnson*, 1997 WL 661760, at *8 (citing *Burrell v. Board of Trustees of Ga. Military College*, 970 F.2d 785, 794 (11th Cir. 1992). However, the Eleventh Circuit in the *Johnson* case was quick to explain that the "narrow intent element of § 1985(3) erects a significant hurdle for § 1985(3) plaintiffs, thereby obviating the need for granting public officials qualified immunity with respect to a § 1985(3) claim." *Johnson*, 1997 WL 661760, at *8.

Accordingly, the defendants' motions for summary judgment on the basis of qualified immunity for the sections 1983, 1981 and 1985(3) claims as to the individual defendants are due to be denied at this time.

## V. Conclusion.

Accordingly, the defendants' motions for summary judgment will be granted in part and denied in part. The court will enter an appropriate order in conformity with this memorandum of opinion.

---

[6] The elements of a section 1985(3) claim are:

> (1) a conspiracy; (2) for the purpose of depriving . . . any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

See *United Brotherhood of Carpenters & Joiners of America, Local 610 v. Scott*, 463 U.S. 825, 828-29, 103 S. Ct. 3352, 3356, 77 L. Ed. 2d 1049 (1983).

18

Done, this __2nd__ of December, 1997.

_____
EDWIN L. NELSON
UNITED STATES DISTRICT JUDGE